UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

                      Plaintiff,        CASE NO. 06-20583

v.

DONZELLE LATRICE O'CONNOR,        HONORABLE PAUL V. GADOLA
                                                 U.S. DISTRICT JUDGE
                    Defendant.
_____/

ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Defendant Donzelle Latrice O'Connor is charged with one count of being a felon in possession of a firearm. Before the Court is Defendant's motion to suppress evidence. An evidentiary hearing on the matter was conducted on October 3, 2007. Following oral argument, the parties agreed as to the relevant facts. The parties also agreed that supplemental briefing on the outstanding legal issues was necessary. The parties filed simultaneous supplemental briefs on October 31, 2007.

**I.    Background**

The parties do not dispute the relevant facts. Defendant was released on parole by the State of Michigan in December 2004. Defendant lived in Flint, Michigan and was under the supervision of Parole Agent Martha Bamford. Bamford testified that while under her supervision, Defendant was generally compliant with the terms of his parole and had made a good adjustment to his post-incarceration life.

At some time in early April 2006, Bamford received an anonymous telephone message on her voice mail from a female caller. Bamford testified that she could not recall the exact date or time of this voice mail message. In the message, the caller indicated that Defendant was selling drugs and had a gun in the basement of his home. Both alleged actions were inconsistent with the terms of Defendant's parole.

Following the anonymous message, Bamford discussed the matter with her supervisor, David Gruenberg. As a result of the conversation, Defendant was put on a list for a visit by the "Nighthawk" team, a regional task force of law enforcement officers that handles suspected parole and probation violations. The Nighthawk team did not make a visit to Defendant's home and Bamford did not otherwise follow up on the tip.

Several weeks later, on April 26, 2006, Bamford received a second anonymous voice mail message, believed to be from the same female caller. Again, this message stated that Defendant was selling drugs and had a gun in the basement of his home. Initially, Bamford testified that one of the messages might have made reference to Defendant's home being located on "Eddington." Defendant actually lived at 149 East Eddington Street, in Flint, Michigan. On cross-examination however, Parole Agent Bamford conceded that she was unsure whether the caller had actually referenced Eddington in either call. Furthermore, Bamford admitted that her notes on this matter did not reflect the caller making any statement regarding Eddington Street. Bamford did not preserve either voice mail message.

Following the second voice mail message, Bamford again consulted Gruenberg. After this consultation, it was decided that the Nighthawk team would search Defendant's home on May 1,

2006. Bamford and Gruenberg testified that the decision to search Defendant's residence was based upon Michigan Administrative Code Rule 791.7735. That rule states:

> Where . . . there is **reasonable cause** to believe that a violation of parole exists, a parole agent may conduct a search of a parolee's person or property if, as soon as possible thereafter, the parole agent files a written report with his or her supervisor setting forth the specific reasons for the search, describing the location or place searched, and describing the specific items seized.

Mich. Admin. Code R. 791.7735(2)(emphasis added). Both Bamford and Gruenberg testified that the Michigan Department of Corrections ("MDOC") has considered an anonymous report of criminal activity by a parolee at his residence to be "reasonable cause" within the meaning of the rule. Bamford also testified that she filed a written report with her supervisor as required under Rule 791.7735(2).

Between April 26, 2006, when the decision to search Defendant's home was made, and May 1, 2006, the date the search was scheduled to take place, neither Bamford nor any other law enforcement officer made any effort to verify the information supplied by the anonymous caller.

On May 1, 2006, acting on the anonymous phone messages and Rule 791.7735(2), Bamford and several assisting law enforcement officers conducted a warrantless search of Defendant's residence. The officers found a firearm. It is this firearm that is the subject of Defendant's present motion to suppress.

**II.    Analysis**

"The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects." *Illinois v. Rodriguez*, 497 U.S. 177, 181,

3

(1990) (citations omitted). In the case of those individuals under state supervision following incarceration, the Supreme Court has ruled that there are exceptions to this general warrant requirement. In the realm of parolee searches, the exceptions fall into two categories, those justified on the "special needs" of the State in successfully rehabilitating released individuals and protecting the public from recidivist crimes, *see Griffin v. Wisconsin*, 483 U.S. 868 (1987), and those related to the general reasonableness requirement of the Fourth Amendment to the Constitution. *See United States v. Knights*, 534 U.S. 112 (2001). Thus, the Court has constructed two frameworks within which to analyze the legality of warrantless parolee searches. *See United States v. Herndon*, 501 F.3d 683, 687 (6th Cir. 2007).

### A. *Griffin* Framework

In the case of *Griffin v. Wisconsin*, the defendant was on probation following convictions of resisting arrest, disorderly conduct, and obstructing an officer. *Griffin*, 483 U.S. at 870. Under a Wisconsin Department of Health and Social Services regulation, probation officers were allowed to conduct warrantless searches of a probationer's home if there were "reasonable grounds" to believe that the probationer possessed contraband. *Id.* at 870. During the defendant's probationary term, Griffin's probation officer "received information from a detective on the [local police department] that there were or might be guns in Griffin's apartment." *Id.* at 871. Griffin's residence was subsequently searched and a weapon was recovered. *Id.*

Following an unsuccessful motion to suppress, Griffin was convicted of possession of the weapon. *Id.* at 872. On appeal, the Wisconsin Supreme Court held that,

the 'reasonable grounds' standard of Wisconsin's search regulation satisfied this

> 'reasonable grounds' standard of the Federal Constitution, and . . . the detective's tip established 'reasonable grounds' within the meaning of the regulation, since it came from someone who had no reason to supply inaccurate information, specifically identified Griffin, and suggested a need to verify Griffin's compliance with state law.

*Id.* at 872 (citing *State v. Griffin*, 131 Wis.2d 41, 52-64, 388 N.W.2d 535, 539-544 (1986)).

The Supreme Court of the United States, examining whether the Wisconsin regulation violated the Fourth Amendment of the Constitution's requirement of reasonableness, concluded, "A State's operation of a probation system, like its operation of a school, government office or prison, or its supervision of a regulated industry, likewise presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." *Griffin*, 483 at 873-74. Therefore, the Court concluded that warrantless searches, conducted pursuant to a valid state regulation governing probationers, is "reasonable" within the meaning of the Fourth Amendment under a "special needs" exception. *Id.* at 880. The Court did not analyze the Wisconsin Supreme Court's determination that the State had complied with its own regulation and satisfied the "reasonable grounds" standard necessary to justify the warrantless search under the Wisconsin regulation. *See id.* at 875, 880, n.8. Instead, the Court ruled that when considering whether the "special needs" of a state probation system justify the state regulation, the federal courts "must take that regulation as it has been interpreted by state correction officials and state courts." *Id.* at 876. *See also United States v. Freeman*, 479 F.3d 742, 747-48 ("Parolee searches are therefore an example of the rare instance in which the contours of a federal constitutional right are determined, in part, by the content of state law."). Therefore, the Wisconsin Supreme Court's determination that the State had satisfied the burden set forth in its regulation was controlling in determining whether

5

the regulation itself was valid.

Finally, even after a determination that a state regulation is valid, a court must then make "a determination of whether the search complied with the applicable provision." *United States v. Loney*, 331 F.3d 516, 520 (6th Cir. 2003)("First, [we] examine whether the relevant regulation or statute pursuant to which the search was conducted satisfies the Fourth Amendment's reasonableness requirement. If so, [we] then analyze whether the facts of the search itself satisfy the regulation or statute at issue."); *Herndon*, 501 F.3d at 688-89 (citing *United States v. Henry*, 429 F.3d 603, 608 (6th Cir. 2005)).

In the present case, there does not appear to be any dispute that Michigan Administrative Code Rule 791.7735(2) is a valid regulation. The Sixth Circuit "has generally tested a search condition's validity by confirming the presence of a reasonable suspicion requirement and its consistency with the federal reasonable suspicion standard." *Herndon*, 501 F.3d at 689. The Supreme Court in *Griffin* approved the very similarly worded Wisconsin regulation, *see Griffin*, 483 U.S. at 880, and the Court of Appeals for the Sixth Circuit has approved similar state regulations requiring a "reasonable suspicion" standard for parolee searches. *See Henry*, 429 F.3d at 609; *Loney*, 331 F.3d at 520-21("[I]t is now beyond question that a state statute survives Fourth Amendment scrutiny if it authorizes searches of parolees based on a reasonable suspicion that an individual is violating the terms or conditions of parole."). The only question remaining then, is whether the search complied with the applicable Michigan Administrative Code Rule.

The Government argues that the facts of the present case are "essentially the same" as the facts as approved of by the United States Supreme Court in *Griffin*. The Government asserts that

6

the justification for searching Defendant O'Connor's residence was even stronger than the justification approved by the Supreme Court in *Griffin*. In particular, the Government notes that Defendant was a parolee, while Griffin was merely a probationer. Additionally, the Government argues that the tip regarding Defendant's violation of parole was more specific and credible than that involved in *Griffin* because, here, the anonymous caller made two calls, both stating that Defendant *was* selling drugs and had a gun in his apartment, rather than information provided in Griffin that "there were or *might be* guns in Griffin's apartment." *Griffin*, 483 U.S. at 871 (emphasis added).

Although the Court recognizes that this case presents a close question, ultimately the Court finds the Government's arguments unpersuasive.

First, the facts of *Griffin* are not applicable to the present analysis. As stated above, the Supreme Court explicitly stated that, "In determining whether the 'special needs' of [the State's] probation system justify [the State's] regulation, we must take that regulation as it has been interpreted by state corrections officials and state courts." *Griffin*, 483 U.S. at 876. *See also United States v. Freeman*, 479 F.3d 742, 747-48. Therefore, Wisconsin's interpretation and application of its own regulation is not relevant to this Court's inquiry into the application of Michigan's regulation in the present case.[1]

Second, considering Michigan's interpretation and application of the relevant regulation, this Court must look to the law of the State of Michigan. Neither the Government nor Defendant have

---

[1]Furthermore, were this Court to consider the facts of *Griffin* as persuasive on the Court, *Griffin* is readily distinguishable from the present case. The tip in Griffin was provided by a law enforcement officer, an inherently more reliable source than the entirely anonymous tip left on Parole Agent Bamford's voice mail system.

provided any Michigan case law on point. However, this Court has previously considered Michigan's "reasonable cause" standard and concluded:

> Under Michigan law, the Government can satisfy the "reasonable cause" standard . . . if the Government's search was based on reasonable suspicion supported by articulable facts. *See United States v. Carnes*, 987 F. Supp. 551, 556, 558-59 (E.D. Mich. 1997) (concluding "that administrative/regulatory searches in the parole/probation context need only, as a matter of Michigan law, be based on reasonable suspicion supported by articulable facts"); *People v. Woods*, 211 Mich. App. 314, 535 N.W.2d 259, 261-62 (1995) (applying the Fourth Amendment "reasonable suspicion" standard to a warrantless administrative search conducted pursuant to Department of Corrections regulations). "Reasonable suspicion is based on the totality of the circumstances and has been defined as requiring 'articulable reasons' and 'a particularized and objective basis for suspecting the particular person . . . of criminal activity.' " *United States v. Payne*, 181 F.3d 781, 788 (6th Cir. 1999) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)).

*United States v. Wade*, 181 F. Supp. 2d 715, 719 (E.D. Mich. 2002)(Gadola, J.). Under this standard, this Court considers Michigan's "reasonable cause" standard to be consistent with the more familiar "reasonable suspicion" language. The Court can find no Michigan case law supporting an interpretation that "reasonable cause" embodies a standard less than "reasonable suspicion."

Considered under this standard, the Court is not persuaded that the two anonymous messages constituted reasonable cause, *i.e.*, reasonable suspicion, such that it satisfied the state regulation. While anonymous tips may support reasonable suspicion if the tip contains "independently verifiable details showing knowledge" and these details "are sufficiently corroborated by the police," *United States v. Hudson*, 405 F.3d 425, 432 (6th Cir. 2005)(quoting *Northrop v. Trippett*, 265 F.3d 372, 381 (6th Cir. 2001)and citing *Florida v. J.L.*, 529 U.S. 266, 270-71 (2000); *Alabama v. White*, 496 U.S. 325, 326-27(1990)), no such details or corroboration were present in the present case. Here, the

content of the two messages was, according to Bamford, virtually identical. Furthermore, Bamford testified that based upon the voice of the caller, the messages were likely left by the same individual. Accordingly, the fact that there were two messages is of no significance. The second message did not add any details to the generic allegations that Defendant was selling drugs and possessed a firearm in his home nor did the second message corroborate the first. *Cf. People v. Harris*, 2004 WL 2601272 (Mich. Ct. App. 2004)(anonymous call to parole agent bolstered by independent second call from a named individual providing additional information and further supported by officer's own call to the Michigan State Police). Moreover, Bamford never spoke to the caller personally. Therefore, she was unable to make any determination of the caller's demeanor, veracity, basis for knowledge, or motive. Finally, Bamford admitted that there was no attempt made to corroborate the information received from the tips. Indeed, according to Bamford's assertion that Defendant had adjusted well to post-incarceration life, the allegations about Defendant were entirely inconsistent with Bamford's supervisory history with Defendant. *Cf. United States v. Loney*, 331 F.3d 516, 523 (6th Cir. 2003)(parole officer's reasonable suspicion was supported by extensive personal knowledge of the defendant's repeated drug problems, including repeated failed drug tests and unsuccessful treatment programs while under supervision). Accordingly, under the circumstances, the Court finds that the Government did not possess "reasonable cause," such that it satisfied the Michigan regulation governing warrantless parole searches.

### B. *Knights* Framework

Although a warrantless search may not fall under the special needs exception set forth in *Griffin*, a warrantless search of a parolee's residence may nevertheless be valid under the framework

of *Knights*. *See United States v. Knights*, 534 U.S. 112 (2001). Under the *Knights* framework,

> a search of a probationer's property must be tested for reasonableness in light of the totality of the circumstances 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'

*Herndon*, 501 F.3d at 691 (*quoting Knights*, 534 U.S. at 119).

This Court begins by recognizing that the state has a very significant interest in supervising its parolees. *See Samson v. California,* 126 S.Ct. 2193, 2200 (2006)("This Court has repeatedly acknowledged that a State has an 'overwhelming interest' in supervising parolees because 'parolees . . . are more likely to commit future criminal offenses.' *Pennsylvania Bd. of Probation and Parole*, 524 U.S. [357,] 365 [(1998)]. . . . Similarly, this Court has repeatedly acknowledged that a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment. *See Griffin*, 483 U.S. at 879; *Knights*, [534 U.S.] at 121.")

However, the Court must also examine Defendant's legitimate expectation of privacy. It is undisputed that,

> Parolees do not enjoy the full panoply of rights afforded the average citizen. *See Morrissey* [*v. Brewer*, 408 U.S. 471,] 494 [(1972)]. They have previously been found guilty of a crime, which allows the state to impose "extensive restrictions" on their liberty. *Id*. at 483. Similarly, they know that at any time, they may be sent back to jail for conduct that would be perfectly lawful for the average citizen.

*United States v. Carnes*, 309 F.3d 950, 961-62 (6th Cir. 2002). Nevertheless, a parolee does retain some expectation of privacy. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) ("the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty"). Under

Michigan law, a parolee's reasonable expectation of privacy is informed by Michigan Administrative Code Rule 791.7735(2). This regulation allows a warrantless search of a parolee's residence if the parole officer has "reasonable cause to believe that a violation of parole exists." Mich. Admin. Code R. 791.7735(2). Under this Court's analysis of the sparse Michigan case law interpreting "reasonable cause," this standard is the equivalent of the "reasonable suspicion" standard of the Fourth Amendment. *See People v. Woods*, 211 Mich. App. 314, 535 N.W.2d 259, 261-62 (1995). As discussed above, the State did not meet that standard and therefore, when balancing the parolee and the Government's interest, even keeping in mind the state's strong interest in supervision of parolees[2], *see Samson,* 126 S.Ct. at 2200, the violation of the State's own promulgated standard provided to the Parolee tips the scales decidedly in favor of the Parolee.

Although the Government argues that both Bamford and her supervisor testified that the Michigan Department of Corrections has consistently considered an anonymous report of criminal activity by a parolee at his residence to be "reasonable cause" within that rule, that argument fails. The precedent of the Michigan courts equates the "reasonable cause" standard with the Fourth Amendment "reasonable suspicion" standard; a standard which, for the reasons stated above, the State did not meet. The Government has failed to produce any case law, regulations, or even

---

[2] The Court also points out that the Government's assertion regarding the State's extraordinary interest in the close supervision of parolees is undermined by the facts surrounding the search conducted in this case. Bamford admitted that after the first anonymous tip, several *weeks* passed without anyone following on the anonymous tip that Defendant was selling drugs and possessed a firearm at his residence. The State did not contact Defendant in any manner nor did anyone visit or surveil his residence. Then, even after the second tip several weeks later, the State waited several days to conduct a search. *See Griffin*, 483 U.S. at 876 (State's "special needs" to dispense with warrant requirement under regulation is justified, in part, by State's necessity to "respond quickly to evidence of misconduct" by a probationer and to enhance deterrent effect of expeditious searches in such situations). Additionally, although the Court need not directly address the issue, it notes that the staleness of a tip is also a factor when considering whether the relevant standard was met. *See e.g.*, *United States v. Payne*, 181 F.3d 781, 789-91 (6th Cir. 1999).

internal memoranda of the MDOC, to support Bamford's interpretation of the rule over that of the Michigan courts. This Court's own search can find no Michigan precedent construing an anonymous tip, without more, as "reasonable grounds" to support the warrantless search of parolee's residence.

**III. Conclusion**

For the reasons stated above, the Court finds that the warrantless search of Defendant's residence, conducted on the basis of two anonymous voice mail messages, was not conducted in compliance with Michigan Administrative Code Rule 791.7735(2).

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendant's motion to suppress evidence [docket entry #13] is **GRANTED**.

**SO ORDERED.**

Dated:   November 20, 2007   s/Paul V. Gadola
HONORABLE PAUL V. GADOLA
UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on   November 20, 2007   , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:          Robert W. Haviland; David A. Koelzer                                         , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:                                                                                         .

s/Ruth A. Brissaud
Ruth A. Brissaud, Case Manager
(810) 341-7845